UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RENEE MARK,

        Plaintiff,                                   Hon. Janet T. Neff

v.

                                                     Case No. 1:09-cv-444

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/


## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 34 years of age at the time of the ALJ's decision. (Tr. 239). Plaintiff completed the tenth grade and previously worked as a stocker, cashier, and parts assembler. (Tr. 240).

Plaintiff applied for benefits on August 5, 2005, alleging that she has been disabled since January 8, 2004, due to fibromyalgia, chronic pain, restless leg syndrome, severe depression, and anxiety. (Tr. 239). Plaintiff's application was denied, at which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 14). A hearing was held on September 5, 2007. (Tr. 235-66). Testimony was given by Plaintiff, an independent medical expert, and an independent vocational expert. (Tr. 236). In a written decision dated October 24, 2007, the ALJ determined that Plaintiff was not disabled. (Tr. 14-21). The Appeals Council declined to review the ALJ's decision. (Tr. 4-7). Plaintiff, appearing without the benefit of counsel, initiated this appeal. Plaintiff's insured status expired on September 30, 2006. (Tr. 14).

3

## MEDICAL HISTORY

On February 11, 2004, Physician Assistant (P.A.) Edwin Newington evaluated Plaintiff. (Tr. 130). Plaintiff reported low back pain that radiated into her left hip and ankle. (Tr. 130). Treatment notes document a decreased range of motion in the neck with tenderness over the cervical spine. (Tr. 130). Straight leg raises were "negative" and reflexes were "2+ equally" throughout. (Tr. 130). Plaintiff participated in an X-ray examination of her cervical and lumbar spine on February 12, 2004. (Tr. 121). Results demonstrated a "normal" cervical and lumbar spine. (Tr. 121).

On February 17, 2004, Plaintiff was evaluated by P.A. Newington. (Tr. 133). Treatment notes document positive "ANA" and "RA" labs. (Tr. 133). Additionally, P.A. Newington diagnosed Plaintiff with connective tissue disease, anxiety, depression, restless leg syndrome, bursitis of the hip, and a sleep disorder. (Tr. 133). P.A. Newington treated Plaintiff on February 24, 2004, for follow-up care regarding multiple joint pains. (Tr. 129). P.A. Newington diagnosed Plaintiff with arthritis of the neck and back, restless leg syndrome, chronic headaches, and positive "ANA" and "RA." (Tr. 129).

Plaintiff treated with Nurse Practitioner Joseph Mashni on March 17, 2004. (Tr. 134). Nurse Mashni noted that Plaintiff "became tearful talking about her discomfort." (Tr. 134). Nurse Mashni diagnosed Plaintiff with fibromyalgia. (Tr. 134). Nurse Mashni reevaluated Plaintiff on March 29, 2004. (Tr. 127). Plaintiff reported feeling "some" better since starting Naprosyn. (Tr. 127). Plaintiff rated her pain as 3 or 4 out of 5. (Tr. 127).

On April 16, 2004, Plaintiff treated with Nurse Mashni. (Tr. 141). Plaintiff reported that she is "beginning to have an occasional good day." (Tr. 141). Nurse Mashni noted point

4

tenderness on both elbows, both shoulders, both hips, both knees, and in the occipital and cervical areas. (Tr. 141). Nurse Mashni recommended Plaintiff begin taking Coenzyme Q10 and a "stress complex B Vitamin." (Tr. 141). Plaintiff, on May 20, 2004, reported to Nurse Mashni that these supplements produced "a reduction in pain." (Tr. 126).

On October 18, 2004, Nurse Mashni evaluated Plaintiff. (Tr. 125). Nurse Mashni noted that Plaintiff experienced "some" improvement in her symptoms while taking her medications but "has had a full return of pain and lethargy after missing her medications." (Tr. 125). On February 15, 2005, Plaintiff reported that her fibromyalgia "has been back to normal yesterday and today." (Tr. 124).

Plaintiff participated in an X-ray study of her cervical spine on April 15, 2005. (Tr. 120). Radiology reports document a "normal examination of the cervical spine." (Tr. 120).

Nurse Mashni evaluated Plaintiff on July 11, 2005. (Tr. 117). Nurse Mashni noted Plaintiff's history of fibromyalgia and documented her "most painful pressure points" are located at the base of the skull and mandible on both sides. (Tr. 117).

Dr. Daniel Clauw evaluated Plaintiff for a medical consultation on July 27, 2005. (Tr. 112-15). Plaintiff reported difficulties falling asleep but that once asleep she sleeps soundly and awakes feeling refreshed. (Tr. 112-15). Plaintiff reported that she is not depressed. (Tr. 112-15). Dr. Clauw diagnosed Plaintiff with fibromyalgia with "associated symptoms" including irritable bowel syndrome, temporomandibular disorder, restless leg syndrome, and chronic fatigue syndrome. (Tr. 112-15). Dr. Clauw communicated to Plaintiff the importance of remaining active and encouraged Plaintiff to increase her activity levels. (Tr. 112-15). Dr. Clauw noted that in fibromyalgia patients increased activity levels may result in a "continuing reduction in complaints

5

of pain." (Tr. 112-15).

Nurse Mashni examined Plaintiff on August 10, 2005. (Tr. 116). Plaintiff demonstrated point tenderness at several locations. (Tr. 116). Plaintiff's current medication regimen was continued. (Tr. 116). Plaintiff treated with Nurse Mashni on May 9, 2006. (Tr. 214). Plaintiff complained of significant tenderness between her shoulder blades, neck, low back, and hips. (Tr. 214). Nurse Mashni altered Plaintiff's medication regimen. (Tr. 214).

On June 13, 2006, Nurse Mashni evaluated Plaintiff. (Tr. 213). Plaintiff declined to take her Lyrica. (Tr. 213). Nurse Mashni noted that Plaintiff's symptoms were both physical and psychological. (Tr. 213). Plaintiff was prescribed Effexor. (Tr. 213). Plaintiff followed-up with Nurse Mashni on June 21, 2006. (Tr. 211). Plaintiff stated that "she is less tearful than she has been over the past two weeks and feels she is getting decent benefit from Effexor." (Tr. 211).

On July 14, 2006, Nurse Mashni prescribed Plaintiff a TENS[1] unit. (Tr. 212). Nurse Mashni noted "significant" clicking in Plaintiff's temporomandibular joint. (Tr. 212). X-rays of Plaintiff's temporomandibular joint (TMJ) were taken on July 18, 2006. (Tr. 169). The results showed no anatomic abnormalities or bony changes. (Tr. 169).

On August 11, 2006, Nurse Mashni treated Plaintiff for her fibromyalgia and related symptoms. (Tr. 210). Plaintiff reported her TENS unit "was helpful" when she used it. (Tr. 210). Nurse Mashni re-enrolled Plaintiff in physical therapy and prescribed Vicodin. (Tr. 210). Nurse Mashni evaluated Plaintiff on September 5, 2006. (Tr. 224). Nurse Mashni opined that Plaintiff's

---

[1] Transcutaneous electric nerve simulators (TENS) work by sending stimulating pulses across the surface of the skin and along the nerve strands. The stimulating pulses help prevent pain signals from reaching the brain. Carol and Richard Eustice, *What are TENS units?*, About.com, April 28, 2009, *available at*, http://arthritis.about.com/od/assistivedevicesgadgets/g/tensunit.htm (last visited February 10, 2010).

subjective complaints were consistent with fibromyalgia. (Tr. 224).

Dr. Farrukh Ambareen evaluated Plaintiff on October 4, 2006, for depression, chronic back pain, and TMJ. (Tr. 208). Plaintiff reported that she experiences "much improvement in her depression" with Effexor. (Tr. 208). Additionally, Plaintiff reported that she was taking 600 milligrams of Motrin at least four times per day for headaches. (Tr. 208). In response, the doctor observed that "NSAID[2] give rebound headaches and excess use of NSAIDs can cause headaches." (Tr. 208). The doctor recommended that Plaintiff "cut down" on her use of Motrin. (Tr. 208). Plaintiff stated "she does not like to take medications but would like to use Vicodin." (Tr. 208).

Nurse Mashni reevaluated Plaintiff on December 19, 2006. (Tr. 200). Plaintiff reported using Vicodin up to three times per day. (Tr. 200). Plaintiff reported that her symptoms seem worse in the morning. (Tr. 200).

On January 23, 2007, Nurse Mashni evaluated Plaintiff. (Tr. 199). Nurse Mashni noted Plaintiff's "discomfort with range-of-motion" testing. (Tr. 199). Plaintiff was given refills of Vicodin and Flexeril "which she uses on a regular basis." (Tr. 199).

On February 2, 2007, Plaintiff communicated to Nurse Mashni that physical therapy relieves "some" of her pain. (Tr. 197). Nurse Mashni noted tenderness at the pressure points located at the base of the skull, neck, and both shoulders. (Tr. 197).

On February 19, 2007, Plaintiff treated with Nurse Mashni for depression and symptoms associated with her fibromyalgia. (Tr. 196). Nurse Mashni noted that Plaintiff's episodic

---

2 Nonsteroidal Antiinflammatory drugs (NSAIDS). Omudhome Ogbru, Pharm D., *NonSteroidal Anti-Inflammatory Drugs (NSAIDS)*, MedicineNet.com, *available at* www.medicinenet.com/nonsteroidal_antiinflammaroty_drugs/article.htm (last visited February 10, 2010).

depression "seems to be related to her menstrual cycle." (Tr. 196). Plaintiff demonstrated tenderness at the pressure points around C7, as well as in the trapezious and scapular areas. (Tr. 196). Nurse Mashni prescribed Vicodin. (Tr. 196).

Plaintiff reported to Nurse Mashni, on March 19, 2007, that "she doesn't want to leave home." (Tr. 192). Nurse Mashni diagnosed Plaintiff with social anxiety. (Tr. 192). On April 20, 2007, Plaintiff treated with Nurse Mashni. (Tr. 188). Plaintiff stated that "Vicodin is usually helpful [in controlling her pain] but frequently she gets to the point of being too uncomfortable and it takes more medication to control her pain." (Tr. 188).

On May 11, 2007, Dr. Mark Lay evaluated Plaintiff. (Tr. 182). Dr. Lay documented that Plaintiff attends physical therapy and that it gives her a temporary benefit. (Tr. 182). Dr. Lay diagnosed Plaintiff with "severe" depression, fibromyalgia, "very tight" shoulder muscles, and controlled substance abuse. (Tr. 182). Dr. Lay conveyed to Plaintiff that "fibromyalgia is a disease of chronic pain . . . and it ought to be something that you can learn to live with." (Tr. 183).

On May 24, 2007, Plaintiff reported to Nurse Mashni that she "does well in the morning with this [Wellbutrin] but has some very anxious uncomfortable sensations in the afternoon." (Tr. 178). Plaintiff reported her pain as 8 out of 10. (Tr. 178). Nurse Mashni noted that the musculature in Plaintiff's neck and shoulders "remain[s] quite tight." (Tr. 178).

On May 25, 2007, Ms. Mary Frank RN, completed a "Medical Provider's Assessment of Ability to do Mental Work-Related Activities." (Tr. 225-27). Nurse Frank diagnosed Plaintiff with dysthymic disorder and generalized anxiety disorder and noted that Plaintiff exhibited "marked limitations" dealing with the public, dealing with work stress, following complex job instructions, relating predictably in social situations, and maintaining social functioning. (Tr. 225).

On May 29, 2007, Plaintiff reported to Nurse Mashni that she has fallen several times recently. (Tr. 176). Plaintiff was evaluated for right hip pain. (Tr. 176). X-rays of the right knee were taken; aside from "equivocal narrowing of the medial joint space and patellofemoral joint space" the study was "unremarkable." (Tr. 167). X-rays of the pelvis, right hip, lumbosacral spine and cervical spine demonstrated no abnormalities. (Tr. 168).

During the administrative hearing, an independent medical expert testified regarding his opinion of Plaintiff's condition. (Tr. 256-57). The medical expert did not independently evaluate Plaintiff, but based his opinion on a review of the evidence. (Tr. 256-57). The medical expert testified that Plaintiff did not suffer from a musculo-structural defect and could perform a full range of light duty work. (Tr. 256-57).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520 (a-f), 416.920(a-f).[3] If the Commissioner can make a

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

While the burden shifts to the Commissioner at step five of the disability determination procedure, Plaintiff bears the burden of proof through step four, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Uckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point the claimant bears the burden of proof).

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffers from fibromyalgia, a severe impairment. (Tr. 16). The ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 8, 2004. (Tr. 16). The ALJ concluded that Plaintiff is able to perform light duty[4] work with

---

factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

[4] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours

the following limitations: no work subjecting her to high stress, no public contact, and the availability of a sit/stand option. (Tr. 18). The ALJ arrived at this conclusion by evaluating the medical records and additionally by questioning an independent medical expert during the hearing. (Tr. 19). The Court concludes that the ALJ's RFC is supported by substantial evidence. The ALJ determined that, although Plaintiff is unable to perform any past relevant work, there exist at least 15,000 jobs in Michigan which Plaintiff would be able to perform. (Tr. 19-20).

In concluding that a significant number of jobs existed that Plaintiff could perform, the ALJ enlisted the assistance of an independent vocational expert. (Tr. 261-62). While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978). (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Harry Cynowa.

The vocational expert testified that approximately 15,000 jobs existed which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 261 - 62). This represents a significant number of jobs. *Born v. Sec'y of Health and Human Services*, 923 F.2d

---

of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ Properly Discounted Plaintiff's Subjective Allegations

Although Plaintiff failed to file a brief according to the Court's order (Dkt. #8), Plaintiff's initial complaint (Dkt. #1) contained a brief narrative detailing her allegations. Reading her narrative indulgently, Plaintiff asserts that the ALJ improperly discounted Plaintiff's subjective allegations. The ALJ concluded that the evidence contained in the record does not fully support Plaintiff's contentions as to the frequency, duration, and intensity of her symptoms. (Tr. 17). The Court finds that the ALJ's decision to discount Plaintiff's subjective allegations is supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

12

> alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ properly concluded, Plaintiff's subjective allegations regarding the extent of her disabling pain and limitations are not fully supported by objective medical evidence. In addition to reviewing the medical records, the ALJ questioned independent medical expert Dr. Ernest Chiodo regarding Plaintiff's condition. Dr. Chiodo opined that Plaintiff could perform a full range of light duty work. (Tr. 256). The doctor further stated that light duty work would be "therapeutic" because "moderate exercise is considered the most effective treatment of fibromyalgia." (Tr. 256). Therefore, the Court finds that the ALJ's decision to discount Plaintiff's subjective allegations is supported by substantial evidence.

As previously noted, Plaintiff is proceeding in this matter without the benefit of counsel. Accordingly, the Court has interpreted Plaintiff's pleadings indulgently and found that the only issue that could plausibly have been raised was that the ALJ improperly discounted Plaintiff's subjective allegations. While the Court must read Plaintiff's pleadings indulgently, it cannot act as counsel for Plaintiff and attribute to Plaintiff arguments which do not find their genesis in Plaintiff's pleadings. Nevertheless, the Court thoroughly reviewed the record to determine whether the ALJ's decision suffers from any defects or deficiencies. This review revealed nothing which calls into question the ALJ's decision making process, the legal standards he applied, or the substantiality of the evidence in support of his decision. Accordingly, while the Court does not doubt that Plaintiff's impairments impose upon her *some* degree of discomfort and limitation, the ALJ's determination that such are less than disabling in severity is supported by substantial evidence.

# CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: May 28, 2010
     /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge